# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA PEREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.: 1:18-cv-1264 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ELISA PEREZ, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Elisa Perez asserts she is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff seeks judicial review of the decision to deny her application for benefits. Because the ALJ erred in evaluating the medical record, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In November 2014, Plaintiff filed applications for benefits under Titles II and XVI, asserting she was unable to work due to the following conditions: depression, Type II diabetes, high blood pressure, high cholesterol, a spinal disc herniation, hernia in the stomach, and a back injury. (Doc. 10-7 at 2-16; Doc. 10-8 at 3) The Social Security Administration denied the applications at the initial level and upon reconsideration. (Doc. 10-4 at 28-29, 60-61) Plaintiff requested a hearing and testified before an ALJ on July 6, 2017. (*See* Doc. 10-3 at 22, 39) The ALJ determined Plaintiff was not

disabled under the Social Security Act, and issued an order denying benefits on October 23, 2017. (Doc. 10-3 at 22-32) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on July 24, 2018. (Doc. 10-6 at 51; Doc. 10-3 at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that a claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Background**

In December 2013, Plaintiff went to an emergency room after suffering a fall. (Doc. 10-4 at 7) Plaintiff described acute shoulder, neck, and back pain a week after her fall. (*Id.*) In addition, she stated she had numbness in her buttocks and down her legs. (*Id.*) Plaintiff exhibited normal range of motion and strength, but had tenderness in her shoulders and neck and was "unable to lift arms up [due] to pain." (*Id.*)

After continued reports of low back pain, which did not improve with therapy and ibuprofen, Plaintiff underwent an MRI on her lumbar spine in July 2014. (Doc. 10-4 at 7) The MRI showed "[d]isc desiccation at L3-4 [with] mild broad based disc bulge." (*Id.*) There was no significant central canal stenosis, and no evidence of nerve root compression. (*Id.* at 8)

Dr. Roger Fast reviewed available records and completed a physical residual functional capacity assessment regarding Plaintiff's current level of functioning on January 8, 2015. (Doc. 10-4 at 9, 11-12) Dr. Fast found Plaintiff's MRI "was essentially normal" and did not show a disc herniation as Plaintiff alleged in her application for benefits. (*Id.* at 9, 12) He noted Plaintiff was "obese and diabetic with hypertension," and cardiac testing showed mild left ventricular hypertrophy. (*Id.*) Dr. Fast opined Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. (*Id.* at 12) He

found no postural, manipulative, or environmental limitations. (*Id.*)

Dr. Steven Swanson performed a psychological assessment on January 13, 2015. (Doc. 10-11 at 22) Plaintiff reported she had never been hospitalized in a psychiatric setting and "no history of treatment of a mental health disorder." (*Id.* at 23) Plaintiff told Dr. Swanson that her work history included "in-home care for elderly persons" and being a janitor and seamstress. (*Id.*) She also stated she could "independently … complete all activities of daily living." (*Id.*) Dr. Swanson observed that Plaintiff "was adequately-oriented to person, time, place, and situation;" and was "[v]ery pleasant." (*Id.* at 24) He determined Plaintiff's "[f]orm and content of thought were within normal limits," without indication of delusional material or psychosis. (*Id.*) Dr. Swanson determined that Plaintiff's "[c]oncentration was adequate for performing simple, mathematical calculations," and "maintained satisfactory attention and concentration." (*Id.*)

Dr. Swanson administered the TONI-3 test, which he noted was "a nonverbal test of intelligence designed for use with disabled or minority populations who may require language-free testing formats," and Plaintiff "obtained a TONI-3 I.Q. of 75." (Doc. 10-11 at 24) Dr. Swanson noted this indicated Plaintiff's intellectual functioning was "at the 5th percentile," and was "equal to or better than 5 percent of individuals the same age." (*Id.* at 25) Thus, Dr. Swanson explained Plaintiff could "be expected to perform at a level that is considerably lower than same-aged peers." (*Id.*) He also administered the WMS-IV, which tested Plaintiff's memory. (*Id.*) He found Plaintiff obtained an immediate memory score of 81 and delayed memory index score of 84, which Dr. Swanson noted were "consistent with the findings of the intelligence test." (*Id.*) Dr. Swanson diagnosed Plaintiff with borderline intellectual functioning and opined:

> [Plaintiff] is judged able to maintain concentration and relate appropriately to others in a job setting. She would be able to handle funds in her own best interest. She is expected to understand, carry out, and remember simple instructions. She is judged able to respond appropriately to usual work situations, such as attendance, safety, and the like. Changes in routine would not be excessively problematic for her. There do not appear to be substantial restrictions in daily functioning. Difficulties in maintaining social relationships do not appear to be present.

(*Id.* at 25-26)

On June 26, 2015, Dr. J. Zhang performed a psychological evaluation upon the request of Department of Social Services. (Doc. 10-11 at 31) Dr. Zhang noted Plaintiff reported a "history of

depression" and was taking a psychotropic medication. (*Id.* at 32) Plaintiff told Dr. Zhang that she was "able to take care of her basic grooming and hygiene needs," prepare simple meals, and go out alone. (*Id.* at 33) She stated had "some difficulty" with making decisions, planning daily activities, and "completing household tasks because of lack of motivation and energy." (*Id.*) Plaintiff also said she could drive, but usually walked or had others drive for transportation. (*Id.*) Dr. Zhang observed that Plaintiff "appear[ed] to be depressed with constricted affect," and was "oriented to time, person, place, and situation." (*Id.*) According to Dr. Zhang, Plaintiff was able "to perform simple calculations" and "repeated 5 digits forward and 3 digits backward," but had "a number of errors" when reporting serial 7s. (*Id.*) Dr. Zhang determined: "The claimant demonstrates mild depression secondary to her medical problems and life difficulties. She is currently prescribed antidepressant medication with some positive result." (*Id.* at 34) Dr. Zhang opined Plaintiff had no impairment with the "[a]bility to understand, remember, and carry out simple instructions;" and she had a mild impairment with detailed and complex instructions. (*Id.*) Dr. Zhang also believed Plaintiff had a moderate impairment with her "[a]bility to maintain attention, concentration, persistence, and pace in common work settings" and "maintain consistent attendance and to perform routine work duties." (*Id.*)

Dr. Amado reviewed the record related to the alleged mental impairment on July 24, 2015. (Doc. 10-4 at 37-38) According to Dr. Amado, the diagnosis of borderline intellectual functioning was "not well-supported in view of [Plaintiff's] adaptive functioning." (*Id.* at 37) However, Dr. Amado noted: "A second look at the evidence on file, including [the] updated psych CE of 6/15, would favor a [mental residual functional capacity] for unskilled work on a sustained basis." (*Id.*) Dr. Amado explained that though clinical depression was not identified by treating sources, Plaintiff "present[ed] with a depressed mood / constricted affect and… some difficulty with sustained concentration for mental math operations such as serial subtractions." (*Id.*) Dr. Amado believed it was "likely that any cognitive issues present [were] secondary to mood impairment and not indicative of an independent concern." (*Id.* at 37-38) Dr. Amado found Plaintiff was "[m]oderately limited" with her abilities to "maintain attention and concentration for extended periods" and "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (*Id.* at 40) Dr. Amado concluded that "on a sustained basis," Plaintiff was "limited to implementation of simple instructions

5

with adequate concentration / persistence / pace in order to complete usual work schedules." (*Id.* at 41)

Dr. Angela Grasser completed a physical medical source statement on May 26, 2017. (Doc. 10-14 at 98) Dr. Grasser noted she began treating Plaintiff in January 2014 and saw her on a monthly basis. (*Id.*) She observed that Plaintiff had been diagnosed with a bulging disc and reported pain in her back, neck, right shoulder, and right knee. (*Id.*) Dr. Grasser noted Plaintiff exhibited a decreased range of motion and tenderness in her back, neck, knee, and shoulder. (*Id.*) Dr. Grasser indicated Plaintiff could walk "1/4 of [a] city block" without rest; sit for twenty minutes at one time; stand for five minutes at one time; and sit, stand, or walk for less than two hours total in an eight-hour day; and never twist, stoop, crouch, squat, or climb. (*Id.* at 99-100) Dr. Grasser believed that Plaintiff's symptoms included imbalance and insecurity, and she should use a cane for "unstable gait." (*Id.* at 99) Further, she indicated Plaintiff would need unscheduled breaks every half hour to lie down, and needed to be able to "shift[] positions at will from sitting, standing, or walking." (*Id.* at 99, 101) Dr. Grasser opined Plaintiff could rarely lift and carry less than 10 pounds, and reach—either in front of her body or overhead—10 percent of the time with her right arm and 80 percent of the time with her left arm. (*Id.* at 99-100) Dr. Grasser indicated that Plaintiff's depression contributed to the severity of her symptoms and functional limitations, and she was capable of low stress work due to depression and anxiety. (*Id.* at 98, 100) Furthermore, Dr. Grasser believed Plaintiff was unable to tolerate extreme cold and should avoid dust due to allergies. (*Id.* at 101)

**B.     Administrative Hearing**

Plaintiff testified before the ALJ at a hearing on July 6, 2017. (Doc. 10-3 at 22) She reported she lived with her husband and adult son, who was on disability. (*Id.* at 43, 50-51) Plaintiff estimated that on any given day, she helped her son for "[a]bout half an hour a day," and was paid for 42 hours each month for taking care of her son by In Home Support Services. (*Id.* at 50, 60) She stated that she would remind her son to take his medication, get it ready for him, prepare his food, and take him to medical appointments every three months. (*Id.* at 51-52)

She reported that she had pain in her back, neck, and right knee. (Doc. 10-3 at 52) Plaintiff wore a brace around her waist at the hearing, which she said was so her back would not "move around too much." (*Id.*) She stated that she wore that whenever she was "going to walk" or go out. (*Id.* at 52-

53) Plaintiff testified she also used a cane, which was prescribed to her sometime in 2015. (*Id.* at 53)

She reported that she no longer could do activities such as sweeping and mopping, because they required her to move her back a lot. (Doc. 10-3 at 56) Plaintiff said that "carrying anything that's heavy" also caused problems with her back, and she was limited to lifting up "anything that's about ten pounds." (*Id.*) Plaintiff reported she could do chores for a total of about four hours in one day. (*Id.* at 58) She estimated that she could stand for 15 or 20 minutes at one time before she needed to take a break, and explained she needed "to be holding onto something if, whenever…standing." (*Id.* at 57) In addition, Plaintiff believed she could walk for "[a]bout five to ten minutes." (*Id.*) She stated that if she stood or walked for too long, she felt like her knee buckled. (*Id.* at 58)

Plaintiff stated she was taking medication for depression and took "[o]ne pill a day." (Doc. 10-3 at 53-54) She said she stopped going to counseling because she got embarrassed, but the medication helped. (*Id.* at 54)

## C.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff not engaged in substantial gainful activity since the alleged disability onset date of September 3, 2014. (Doc. 10-3 at 24) Second, the ALJ found Plaintiff's severe impairments included: "Coronary artery disease secondary to hypertension; diabetes mellitus II; obesity; degenerative disc disease with disc bulge at L3-4; sacroiliac arthropathy, and right knee osteoarthritis." (*Id.*) The ALJ noted Plaintiff had been diagnosed with depression, but found it "does not cause more than minimal limitation in …[her] ability to perform basic mental work activities and is therefore nonsevere." (*Id.* at 26) At step three, the ALJ determined Plaintiff's impairment did not meet or medically equal a Listing. (*Id.* at 21-22) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform work as follows: lift and carry 25 pounds frequently and lift 50 pounds occasionally; stand and walk six for a total of six out of eight hours; sit six hours in an eight-hour workday; [and] work involving no more than occasional exposure to cold temperature extremes.

(*Id.* at 26) With this residual functional capacity, the ALJ found Plaintiff was "capable of performing past relevant work as a home care attendant." (*Id.* at 32) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from September 3, 2014, through the date of the decision. (*Id.* at 32)

# DISCUSSION AND ANALYSIS

Appealing the decision to deny his applications for benefits, Plaintiff argues that the ALJ erred in evaluating the medical record in finding her mental impairment was not severe and rejecting the limitations identified by her treating physician, Dr. Grasser. (Doc. 18 at 1, 13-19) On the other hand, the Commissioner argues that "the ALJ properly weighed the medical opinion evidence and assessed [a residual functional capacity] consistent with the record as a whole." (Doc. 23 at 13, emphasis omitted).

## A. Finding's Related to Plaintiff's Mental Impairments

The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). At step two, a claimant must make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id*. at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id.*; *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("The burden of proof is on the claimant at steps one through four...").

An impairment, or combination thereof, is "not severe" if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work." *Smolen*, 80 F.3d at 1290. For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These activities include "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id*.

The "Paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 are used to evaluate the severity of mental impairments of a claimant, and include the ability to: "[u]nderstand, remember,

or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *See id.*, §12.00(A)(2)(b) (2018). The Regulations inform claimants:

> If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

### 1. The ALJ's Findings

The ALJ determined Plaintiff's "medically determinable mental impairment does not cause more than minimal limitation in … [her] ability to perform basic mental work activities and is therefore nonsevere." (Doc. 10-3 at 25) In making this finding, the ALJ indicated she considered the Paragraph B criteria and noted:

> The claimant's mental impairment causes a mild restriction in understanding, remembering, or applying information, and concentration, persistence, and pace; and no restriction in interacting with others or adapting or managing oneself. Despite the claimant's physical and mental complaints, she does housework and meal preparation, helps care for her disabled adult son, has no problems with personal care, knits, drives, shops, is able to handle her finances, reads, watches television, talks on the phone, attends church, and is able to pay attention and follow instructions (Exhibit 4E; testimony).
>
> The record indicates complaints of situational stressors and depression related to physical limitations (Exhibit 12F, pp. 51, 83, 85, 91). The claimant was prescribed Wellbutrin and Celexa by her primary doctor, and was evaluated by behavioral health in May 2015 for depression, and seen again for depression secondary to pain, and financial stress. (Exhibit 12F, p. 101). She reported slight improvement in her symptoms with medication, and she was doing well by July 2015 (Exhibit 12F, pp. 83, 101, 107). The claimant testified that she takes Sertaline (Zoloft) daily which helps; and that she attended counseling in 2015 but has not continued because she gets [embarrassed].

(Doc. 10-3 at 25)

Plaintiff asserts this analysis was flawed because the ALJ rejected "the opinions of every medical professional concerning Plaintiff's severe mental impairment" and relied "on her lay interpretation of the records." (Doc 18 at 13) In particular, Plaintiff observes that "every medical expert who examined the Plaintiff or reviewed her medical records concluded that her impairment is severe, as it causes at least moderate limitations in functioning, and would impact per ability to work." (*Id.* at 14)

### 2. Medical evidence related to the Paragraph B domains

The ALJ did not clearly identify the evidence considered related to the domains, but

9

summarized evidence after stating her findings. However, each of the domains address various aspects of a claimant's ability to perform basic work activities. As explained by the regulations, the ability to understand, remember, or apply information "refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(1) (2018). Examples of such abilities include "[u]nderstanding and learning terms, instructions, [and] procedures," and "following one-or two-step oral instructions to carry out a task." (*Id.*) The ability to learn information is separate from a claimant's ability to maintain "concentration, persistence, or pace" for basic work activities. *See* 20 C.F.R., Pt. 404, Subpart P, App. 1, 12.00(A)(2)(b).

As Plaintiff observes, in making the step two determination, the ALJ did not address the limitations identified by physicians related to Plaintiff's mental impairment, including her abilities to understand, remember, and carry out tasks; and related to concentration, persistence, and pace. (*See* Doc. 10-3 at 26) However, each of the physicians in the record assessed limitations related to Plaintiff's mental abilities. For example, Dr. Swanson administered intelligence and psychological testing and found Plaintiff's "[c]oncentration was adequate for performing simple, mathematical calculations" and she could be "expected to understand, carry out, and remember simple instructions." (Doc. 10-11 at 24-26) Dr. Zhang performed a second psychological evaluation and opined Plaintiff had a moderate impairment with impairment with her "[a]bility to maintain attention, concentration, persistence, and pace in common work settings" and "maintain consistent attendance and to perform routine work duties." (*Id.* at 34) Likewise, Dr. Amado concluded Plaintiff was "[m]oderately limited" with her abilities to "maintain attention and concentration for extended periods" and "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (Doc. 10-4 at 37-38) Finally, Plaintiff's treating physician, Dr. Grasser, indicated her belief that Plaintiff's depression contributed to the severity of her symptoms, and Plaintiff was limited to low stress work due to depression and anxiety. (Doc. 10-14 at 98, 100) Each of these opinions support a conclusion that Plaintiff's mental impairments were severe but were not discussed by the ALJ in the step two analysis.

On the other hand, the ALJ purported to reject several of these findings when addressing Plaintiff's residual functional capacity, and the decision to not iinclude any mental limitations. For example, the ALJ gave little weight to the opinion of Dr. Swanson because of Plaintiff's "history of

work in a semiskilled position and in consideration of the cultural/linguistic barriers to accurate standardized testing noted in the report." (Doc. 10-3 at 30) However, the ALJ fails to explain how Plaintiff's work history—years prior to the evaluation—related to her current level of functioning as assessed by Dr. Swanson, or her level of functioning during the relevant period. In addition, the ALJ failed to explain why the intelligence testing scores were rejected on cultural/linguistic grounds when Dr. Swanson noted the test administered was specifically "for use with… or minority populations who may require language-free testing formats." (*See* Doc. 10-11 at 24) Indeed, Dr. Swanson also administered the WMS-IV to test Plaintiff's memory, and found the results for the test were "consistent with the findings from the intelligence test." (*Id.* at 25) Thus the reasons identified by the ALJ for rejecting the opinions of Dr. Swanson are not adequately supported by the record.

Similarly, the ALJ fails to identify legally sufficient reject the opinions of Drs. Zhang and Amado that Plaintiff had *moderate* limitations with her ability to maintain attention, concentration, and pace; and maintain attendance to perform routine work duties. (*See* Doc. 10-4 at 37; Doc. 10-11 at 41) The ALJ indicated she gave little weight to these opinions because Plaintiff "performs a wide range of daily activities," including "regular appointments for her health, works daily as a care provider for her son, drives, and performs household duties, including cooking, shopping, handling the finances, and driving." (Doc. 10-3 at 31) The Ninth Circuit indicated an ALJ may reject limitations identified by physicians where limitations identified "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, the activities identified by the ALJ address the domain of Plaintiff's ability to adapt or manage herself, not her ability to concentrate. *See* 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(4) (factors to be considered include a claimant's ability to make plans and maintain personal hygiene); *see also Icobucci v. Berryhill*, 2018 U.S. Dist. LEXIS 96076, at *5 (W.D.N.Y. June 7, 2018) (finding the claimant did "not have… deficits in *adaptive functioning*" where the plaintiff as able to clean, shop, take care of her daughter, and "[the] plaintiff stated that she could perform her own personal needs, follow directions, and can take standardized measures of intellectual functioning testing") (emphasis added). Furthermore, Plaintiff testified that her daily work for her son is no more than thirty minutes, and she transported him to appointments once every three months. (Doc. 10-3 at 50, 51-52, 60) These limited

activities do not address Plaintiff's concentration, persistence, or pace; and the ALJ has failed to explain how the limitations identified by Drs. Zhang and Amado were inconsistent with Plaintiff's level of activity.

Because the ALJ erred in her evaluation at step two by ignoring probative evidence related to Plaintiff's mental functioning—including findings that her impairments included moderate limitations—Plaintiff has carried the burden to demonstrate the ALJ erred in finding her depression was not a severe impairment at step two. Likewise, the decision of the ALJ to not incorporate any mental limitations in the residual functional capacity is not supported by the record, because the ALJ did not identify legally sufficient reasons, supported by the record, for rejecting the physicians' opinions regarding Plaintiff's mental abilities.

**B.    Evaluation of the Opinion of Dr. Grasser**

Dr. Grasser, Plaintiff's treating physician, completed a physical source statement in May 2017, which the ALJ gave "little weight." (Doc. 10-3 at 29-30) Plaintiff contends the ALJ erred in doing so, and instead giving "significant weight" to the opinions of non-examining physicians, Drs. Fast and Nasrabadi. (Doc. 18 at 16-18)

When evaluating the evidence from medical professionals, three categories of physicians are distinguished: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight, but it is not binding on the issue of a disability. *Id.*; 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.* An ALJ may reject the opinion of a medical source that is contradicted by another with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Because the opinion of Dr. Grasser conflicted with the opinions of Drs. Fast and Nasrabadi, the ALJ was required to identify specific and legitimate reasons for rejecting the opinion.

In addressing each of the medical opinions in the record, the ALJ summarized the conclusions of Dr. Grasser related to Plaintiff's limitations and abilities, and stated:

> The undersigned gives little weight to this opinion because the entirety of the medical record, including that of Dr. Grasser's treatment notes and the associated records of Adventist Health Community Care, do not support such exertional, postural, environmental, mental and manipulative restrictions. (Exhibits 3F, 9F, 12F) In 2014, Dr. Grasser treated the claimant once a month for her physical impairments, including diabetes mellitus, obesity, hypertension, and bronchitis, with largely prescription medication maintenance, treatment for allergic medication reaction, and adjustment of lifestyle and diet recommendations. The treatment notes, nor the objective findings, do not indicate worsening musculoskeletal impairments, an abnormal gait, or the need for a cane (Exhibit 12F).

(Doc. 10-3 at 30)

The Ninth Circuit determined an opinion may be rejected where there are internal inconsistencies within a physician's report. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Further, an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)).

When an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ cites to more than 280 pages of medical evidence—without identifying any specific objective findings— in support of the conclusion that the record does not support the limitations identified by Dr. Grasser. In doing so, the ALJ fails to identify specific conflicts in the record and fails to resolve any conflict. Rather, the ALJ offers only her conclusion the record conflicts with the physician's opinion. *See Embrey,* 849 F.2d at 421; *see also Wilson v. Colvin*, 2016 U.S. Dist. LEXIS 28128 at *20 (N.D. Cal. Mar. 3, 2016) (finding the ALJ erred where she "did not identify the specific conflicting clinical evidence she relied on, and referred only to the treatment records, imaging studies,

13

clinical findings and lab findings generally" and thus offered "no more than boilerplate language" to reject an opinion as inconsistent with the record).

The ALJ fails to acknowledge Dr. Grasser's report that Plaintiff exhibited a decreased range of motion, and tenderness in her back, right knee, and right shoulder. (*See* Doc. 10-14 at 89) These findings are supported by the treatment record, which includes objective findings such as decreased range of motion in the shoulder, positive Gaenslen's signs, positive Patrick's signs, positive straight leg raising, and trigger points. (*See, e.g.,* Doc. 10-12 at 3; Doc. 10-13 at 5, 11) Though the ALJ "need not discuss *all* evidence presented," she "must explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)) (emphasis in original). Because the ALJ engaged in selective reading of the record, the ALJ erred in rejecting the limitations of Dr. Grasser.

**C.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Plaintiff met the burden to identify evidence in the record, which was not properly addressed or rejected by the ALJ, that her mental impairment is severe at step two. In addition, the ALJ failed to carry her burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence" to reject the opinion of Dr. Grasser as inconsistent with the medical record. *See Cotton*, 799

14

F.2d at 1408. Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence and Plaintiff's residual functional capacity. *See Moisa* , 367 F.3d at 886.

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical record, and decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Thus, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Elisa Perez and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **March 4, 2020**                    **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE